Theodore V. H. Mayer
Vilia B. Hayes
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,
by ANDREW M. CUOMO, Attorney General of
the State of New York, and THE CITY OF NEW
YORK,

                                 Plaintiffs,

            -against-

MERCK & CO., INC.,

                                Defendant.

**No.:** 07 Civ 8434

------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

Defendant Merck & Co., Inc. ("Merck") respectfully submits this Memorandum of Law in support of its motion to stay all proceedings in this action pending its likely transfer to *In re Vioxx Marketing, Sales Practices And Products Liability Litigation*, MDL No. 1657, the multidistrict litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana before the Honorable Eldon E. Fallon to coordinate all federal court product liability lawsuits involving Vioxx®. *In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, 1353-54

(J.P.M.L. 2005) (establishing MDL-1657 because coordinated pretrial proceedings will serve the convenience of the parties and conserve judicial resources).

As set forth below, a stay is appropriate because this action raises overlapping factual, legal and jurisdictional issues with five other lawsuits regarding Vioxx filed by state attorneys general and one similar action filed by a private citizen on behalf of the State of Colorado that are pending before Judge Fallon for pretrial proceedings in the MDL. The Judicial Panel on Multidistrict Litigation (the "MDL Panel" or "Panel") has transferred five of these lawsuits to MDL-1657. (One was removed directly to the MDL.) Merck will shortly provide notice to the Panel pursuant to Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation of the pendency of this "tag-along" action. Merck expects a conditional transfer order transferring this case to MDL-1657 to be issued shortly thereafter.

Absent a stay, this Court would waste time supervising pretrial proceedings and making rulings that could prove inconsistent with rulings in the MDL court. Moreover, without a stay, Merck would be substantially and unfairly prejudiced because it would be required to engage in duplicative discovery and motion practice in multiple jurisdictions. For these reasons, Merck respectfully requests that the Court grant its motion for a stay.

## BACKGROUND

This is one of seven Medicaid-related actions brought against Merck involving the issue of state payments for Vioxx that are currently pending in federal court. Specifically, in six other cases which are now pending in MDL-1657, plaintiffs seek damages and civil penalties for claimed misrepresentations made to the states regarding Vioxx, which allegedly caused the states to reimburse money under their Medicaid program. *See Utah v. Merck & Co., Inc.*, No. 06-9336 (E.D. La.) Compl. ¶ 18 ("While making Vioxx available to Medicaid patients, Defendant

knowingly misrepresented to the State, as well as to physicians and the general public that Vioxx was safe and efficacious. The State of Utah allowed the purchase of Vioxx for Utah Medicaid recipients based upon such representations by Defendant."); *Hood v. Merck & Co., Inc.*, No. 05-6755 (E.D. La.) Compl. ¶ 7 ("the State of Mississippi . . . brings this action . . . to recover amounts paid for the drug VIOXX® by the State, through its agencies and instrumentalities, as a result of the fraudulent conduct of [Merck]"); *Foti v. Merck & Co., Inc.*, No. 05-3700 (E.D. La.) Compl. ¶ 16, (Merck, "by requesting that Vioxx be placed on Louisiana's Medicaid formulary . . . directly or implicitly represented to [the State of Louisiana] that Vioxx was safe."); *State of Montana v. Merck & Co., Inc.*, (E.D. La.) Compl. ¶ 85 ("Merck has been unjustly enriched by its false, deceitful, and misleading conduct to the extent that . . . the State of Montana [has] unknowingly paid excessive costs for Vioxx when [it] could have purchased significantly less expensive traditional pharmaceuticals that would have been equally effective and without the severe cardiovascular risks of Vioxx."); *Alaska v. Merck & Co., Inc.*, No. 06-3132 (E.D. La.) Compl. ¶ 18 (Merck "knowingly or intentionally made, caused to be made, induced, or sought to induce the making of false statements or misrepresentations of material fact concerning the safety, or lack thereof, of Vioxx . . . to the Alaska Medicaid Program.") (attached to the September 28, 2007 Declaration of Vilia B. Hayes ("Hayes Decl.") as Exhibits A through E).[1] Similar allegations are made in this action. *See New York v. Merck & Co., Inc.*, No. 07-8434 (S.D.N.Y.) Compl. ¶¶ 1, 76 (Merck "has engaged in repeated and persistent fraud and has caused false and fraudulent claims to be submitted to the New York State Medical Assistance Program ('Medicaid') and the Elderly Pharmaceutical Insurance Coverage ('EPIC') program by

---

[1] Even though one additional such case, *Franklin on behalf of the State of Colorado v. Merck & Co., Inc.*, was brought by a private citizen, the issues it presents regarding Medicaid are the same as the attorney general actions. *See Franklin on behalf of the State of Colorado v. Merck & Co., Inc.*, No. 07-2073 (E.D. La.) Compl. ¶ 4 ("Plaintiff seeks in this action reimbursement of the monies paid by the state of Colorado through its Medicaid program for the prescription drug Vioxx."). (Hayes Decl. Ex. F.)

3

suppressing, misrepresenting and concealing material information in its communications with doctors and patients concerning the seriousness of the cardiovascular risks associated" with Vioxx and "Merck's . . . fraud in suppressing, misrepresenting and concealing the material information about Vioxx's increased cardiovascular risk . . . injured the New York Medicaid and EPIC programs"). (Hayes Decl. Ex. G.)

The MDL Panel has previously transferred five Medicaid-related actions to MDL No. 1657 finding that they "involve common questions of fact with actions in this litigation previously transferred to the Eastern District of Louisiana." *In re Vioxx Prods. Liab. Litig.*, MDL-1657, Transfer Orders dated June 14, 2006 (transferring *State of Alaska*), August 10, 2006 (transferring *Montana*), October 18, 2006 (transferring *State of Utah*), and April 18, 2007 (transferring *Franklin*). *See also In re Vioxx Prods. Liab. Litig.*, MDL-1657, Conditional Transfer Order (CTO-34) (December 6, 2005 J.P.M.L.) (transferring *Hood*). (Attached collectively to the Hayes Decl. as Ex. H.) The Louisiana case was removed directly to the MDL court. Merck will timely notify the MDL Panel of the pendency of this case as well.

Because these six previously filed Medicaid-related cases are already in the MDL proceeding, and because this action raises similar allegations, the most efficient approach is to stay this case pending its transfer to the Vioxx MDL court.

## ARGUMENT

The Court should exercise its discretion to stay all further proceedings in this action pending its likely transfer to MDL-1657. The authority of a federal court to stay proceedings is well established. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

4

This Court should stay all proceedings here in the interests of judicial economy, consistency of rulings, and fairness. Courts generally analyze three factors when determining whether a stay is appropriate during the pendency of the MDL Panel's transfer decision. First, courts consider "the judicial resources that would be saved by avoiding duplicative litigation" if the case is transferred to the MDL court. *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Second, courts examine the "hardship and inequity to the moving party if the action is not stayed." *Id.* Third, courts examine the "potential prejudice to the non-moving party" if the stay is granted. *Id.* All three factors weigh in favor of a stay here.

### A.  Judicial Economy and Consistency of Rulings Favor Granting A Stay.

First, granting a stay will promote judicial economy. The explicit purpose of multidistrict litigation is to coordinate the pretrial management of actions sharing common issues in a "just and efficient" manner. 28 U.S.C. § 1407(a). Allowing an action that overlaps with others that are already part of the MDL proceeding to proceed while the Panel makes a determination on transfer would undermine that purpose. *See, e.g., Rivers*, 980 F. Supp. at 1360 (absent a stay, "this Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge"). Indeed, granting a stay of this action pending its likely transfer to MDL-1657 will *conserve* the resources of this Court and prevent duplicative discovery and pretrial management efforts. *See id.* at 1360-61 ("any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation."). *See also North v. Merck & Co., Inc.*, No. 05-CV-6475L, 2005 WL 2921638, at *2 (W.D.N.Y. Nov. 4, 2005) ("Entering a stay will…conserve judicial resources, one of the fundamental goals of multidistrict litigation practice."); *Bledsoe v. Pharmaceutica*, No. 4:05CV02330 ERW, 2006 U.S. Dist. LEXIS 5524, at *3-4 (E.D. Mo. Feb. 13, 2006) ("judicial economy weighs heavily in favor of granting the requested stay…" [which]

will…conserve judicial resources because only one court will need to make [pretrial] rulings" and "both parties will benefit from coordinated pretrial management").

Second, granting a stay will avoid the risk of inconsistent rulings on early motions. *Am. Seafood, Inc. v. Magnolia Processing, Inc.*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) (granting a stay because district court's determination of pretrial motions "may conflict with the decisions of the Northern District of Mississippi which has in front of it similar motions. The result is that the defendants may be forced to prosecute or defend similar motions twice and the decisions of this Court and the Northern District may be in conflict." (citing *Arthur-Magna, Inc. v. Del-Val Fin. Corp.*, Civ. A. No. 90-4378, 1991 WL 13725 (D.N.J. Feb. 1, 1991)); *Portnoy v. Zenith Labs.*, Civ. A. No. 86-3512, 1987 WL 10236 (D.D.C. Apr. 21, 1987)). Along with efficiency, the need to avoid the risk of inconsistent rulings is also one of the reasons why Congress established the multidistrict litigation procedure. *See In re Vioxx Prods. Liab. Litig.*, 360 F. Supp. 2d 1352, at 1354 ("Centralization under [28 U.S.C. § 1407] is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.").

Courts around the country have now stayed more than 3,400 Vioxx-related cases, recognizing that the objectives of judicial economy and consistent treatment of like motions are furthered by issuing stays. *See, e.g., North v. Merck & Co., Inc.*, No. 05-CV-6475(DGL)(JWF), 2005 WL 2921638, at *2 (W.D.N.Y. Nov. 4, 2005) ("Entering a stay will . . . conserve judicial resources, one of the fundamental goals of multidistrict litigation practice."); *Aguilar v. Merck & Co., Inc.*, No. 05-CV-4865 (SJ), slip op. (E.D.N.Y. Nov. 22, 2005) (Hayes Decl. Ex. I); *Reid v. Merck & Co., Inc.*, No. 6:05-cv-06621-DGL, slip. op. (W.D.N.Y. Mar 1, 2006) and related cases (Hayes Decl. Ex. J); *Campbell v. Merck & Co., Inc.*, No. 05-CV-6740L, slip. op. (W.D.N.Y. Mar

6

1, 2006) and related cases (Hayes Decl. Ex. K); *Pace v. Merck & Co., Inc.*, No. 04-1356 MCA/ACT, slip op. at 4 (D.N.M. Jan. 10, 2005) (determining that "consolidation of the numerous pending Vioxx cases will likely conserve judicial resources and promote judicial economy, Merck's motion to stay will be granted") (Hayes Decl. Ex. L); *Hatch v. Merck & Co.*, No. 05-1252 T/AN, 2005 WL 2436716, at *2 (W.D. Tenn. Oct. 3, 2005) ("having the . . . issues decided in one proceeding will promote judicial economy and conserve judicial resources"); *Euell v. Merck & Co.*, No. 4:05CV01497 ERW, 2005 WL 2348487, at *1 (E.D. Mo. Sept. 26, 2005) (finding "Merck's judicial economy argument persuasive" and granting motion to stay pending resolution of the MDL transfer issue); *Falick v. Merck & Co., Inc.*, No. 04-3060, slip op. at 2 (E.D. La. Jan. 3, 2005) ("Considering the multitude of cases currently stayed due to the pending MDL coordination, the Court finds that staying the proceedings will serve the interests of judicial economy.") (Hayes Decl. Ex. M). In fact, courts with cases like this one – brought by states to recover money allegedly spent on Vioxx through Medicaid – have agreed with this reasoning. *See, e.g., Montana v. Merck & Co., Inc.*, No. CV-06-07-H-DWM, slip op. at 1-2 (D. Mont. May 12, 2006) (noting the importance of the "staggering number of cases involving Merck that are now before the United States District Court for the Eastern District of Louisiana as part of MDL Proceeding No. 1657.") (Hayes Decl. Ex. N). Indeed, the majority of courts agree with the wisdom of staying cases in this procedural posture. *See Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001) ("The general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel"); *N.M. State Inv. Council v. Alexander*, 317 B.R. 440, 443 (D.N.M. 2004) (granting stay pending MDL transfer because "deference to the MDL court . . . provides the opportunity for the uniformity, consistency, and

predictability in litigation that underlies the MDL system."); *Mathern v. Wyeth*, No. Civ.A.04-2116, 2004 WL 1922028, at *1 (E.D. La. Aug. 25, 2004) (same); *Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002) (same). The same logic applies in this case. Because plaintiffs' claims and legal theories overlap with six other lawsuits that are already being heard in the Vioxx MDL, the interests of judicial economy and consistency of rulings strongly favor a stay here.

> **B.    Without a Stay, Merck Will Be Significantly Prejudiced While Plaintiffs Will Suffer Minimal Or No Prejudice If The Case Is Stayed Pending MDL Transfer.**

The Court should also issue a stay in order to minimize prejudice to Merck by having to defend overlapping lawsuits in multiple jurisdictions. If this case were permitted to go forward here, Merck would be required to litigate the same complex issues here as in the MDL court. *See, e.g., Am. Seafood*, 1992 WL 102762, at *2 ("The duplicative motion practice and discovery proceedings demonstrate that…prejudice to the defendants weighs heavily in favor of the stay."); *Arthur Magna*, 1991 WL 13725, at *1 (even where non-moving party claims that a stay will cause delay and prejudice, "there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay"). Without question, this factor also warrants granting a stay here.

In applying this reasoning in similar Vioxx cases, numerous courts have recognized that the prejudice to Merck absent a stay far outweighs any potential hardship to plaintiffs if a stay is granted. *See Alaska v. Merck*, No. 3:06-cv-0018-TMB, slip op. at 3 (D. Alaska Mar. 6, 2006) ("The State will suffer minimal prejudice from the stay. By contrast, the risk to Merck of duplicative litigation is significant.") (Hayes Decl. Ex. O); *Pace*, slip op. at 3-4 ("potential prejudice to Plaintiffs is minimal. . . . On the other hand . . . Merck faces a significant risk of duplicative motion practice and redundant discovery proceedings absent a stay. . . . I conclude

that the risk of hardship to Merck absent a stay far outweighs any prejudice likely to be caused to Plaintiffs as the result of a stay.") (Hayes Decl. Ex. L). Whatever short delay, if any, plaintiffs will suffer is outweighed by the benefits they will receive from coordinated motions practice on the same jurisdictional issues. Moreover, plaintiffs will benefit from discovery that has already taken place and will continue to take place in the MDL court. Thus, plaintiffs will not be prejudiced by a stay of proceedings in this Court. Even if they were, the prejudice to Merck without a stay, coupled with considerations of judicial economy and the risk of inconsistent rulings, outweigh the possibility of such prejudice.

## CONCLUSION

For all of the foregoing reasons, Merck respectfully requests that this Court grant its motion to stay all proceedings in this case pending transfer to the Vioxx MDL proceeding that has been established in the Eastern District of Louisiana.

DATED: New York, New York
September 28, 2007

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ Vilia B. Hayes
Theodore V. H. Mayer
Vilia B. Hayes
Robb W. Patryk

One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*