Theodore V. H. Mayer
Vilia B. Hayes
Robb W. Patryk
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
THE PEOPLE OF THE STATE OF NEW          :  **Civ. No.: 07 Civ 8434(GBD)**
YORK, by ANDREW M. CUOMO, Attorney      :
General of the State of New York, and THE   :
CITY OF NEW YORK,                       :  **DECLARATION OF VILIA B. HAYES**
                                        :
                         Plaintiffs,    :
                                        :
            -against-                   :
                                        :
MERCK & CO., INC.,                      :
                                        :
                         Defendant.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VILIA B. HAYES declares as follows:

1.      I am an attorney admitted to practice before this Court and a member with

the firm of Hughes Hubbard & Reed LLP, attorneys for defendant Merck & Co., Inc. ("Merck").

As such, I am fully familiar with the facts set forth herein. I make this declaration based on my

own personal knowledge and the business records of the Firm.

2.      I make this declaration in support of the Reply Memorandum of Law in

Further Support of Motion by Defendant Merck & Co., Inc. to Stay All Proceedings Pending

Transfer Decision by the Judicial Panel on Multidistrict Litigation.

3.    Attached hereto as Exhibit A is a true and correct copy of the letter from the JPML to the Hon. Ricardo H. Hinojosa, dated March 21, 2005.

4.    Attached hereto as Exhibit B is a true and correct copy of the transcript of the Status Conference before the Honorable Eldon E. Fallon on June 23, 2005.

5.    Attached hereto as Exhibit C is a true and correct copy of the slip opinion issued in *State of Montana v. Merck & Co., Inc.*, No. CV-06-07-H-DWM (D. Mont. May 11, 2006).

6.    Attached hereto as Exhibit D is a true and correct copy of the slip opinion issued in *State of Alaska v. Merck & Co., Inc.*, No. 3:06-cv-0018-TMB (D. Alaska Mar. 6, 2006).

7.    Attached hereto as Exhibit E is a true and correct copy of the Memorandum and Order issued in *Aguilar v. Merck & Co., Inc.*, No. 05-CV-4865 (SJ) (E.D.N.Y. Nov. 22, 2005).

8.    Attached hereto as Exhibit F is a true and correct copy of the slip opinion issued in *Campbell v. Merck & Co., Inc.*, No. 05-CV-6740L, and related cases (W.D.N.Y. Mar. 1, 2006).

9.    Attached hereto as Exhibit G are true and correct copies of the Complaints in *Foti, ex rel. State of Louisiana*, No. 05-3700 (E.D. La. May 5, 2006), *Hood, ex rel. State of Mississippi*, No. G2005-1742 (1st Jud. Dist. Ch. Ct. Miss. Oct. 4, 2005), *State of Alaska*, No. 3AN-05-14292 CI (3d Jud. Dist. Ct. Alaska Dec. 29, 2005), *McGrath, ex rel. State of Montana*, No. ADV.2005.899 (1st Jud. Dist. Ct. Mont. Dec. 28, 2005), *State of Utah*, No. 060907140 (Kouris) (3d Jud. Dist. Ct. Utah Apr. 28, 2006).

10.    Attached hereto as Exhibit H is a true and correct copy of the slip opinion issued in *Holmes v. Merck & Co., Inc.*, No. 4:05CV00439 ERW (E.D.Mo. May 3, 2005).

11.    Attached hereto as Exhibit I are true and correct copies of Remand Orders issued in *Tallas, et al. v. Merck & Co., Inc., et al.*, dated September 5, 2006, and *Garza, et. al. v. Evans, et. al.*, dated November 22, 2005.

12.    Attached hereto as Exhibit J is a true and correct copy of Order setting briefing schedule, issued in *Flippin, et al. v. Merck & Co., Inc., et al.*, dated August 8, 2007.

13.    Attached hereto as Exhibit K is a true and correct copy of the transcript of the Status Conference before the Honorable Eldon E. Fallon on August 25, 2005.

14.    Attached hereto as Exhibit L is a true and correct copy of the transcript of the Status Conference before the Honorable Eldon E. Fallon on October 27, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

VILIA B. HAYES

Executed this
26 th day of October, 2007

# Exhibit A

# UNITED STATES OF AMERICA
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

CHAIRMAN:
Judge Wm. Terrell Hodges
United States District Court
Middle District of Florida

MEMBERS:
Judge John F. Keenan
United States District Court
Southern District of New York

Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Robert A. Cahn
Executive Attorney

DIRECT REPLY TO:

Michael J. Beck
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: (202) 502-2800
Fax:      (202) 502-2888

http://www.jpml.uscourts.gov

March 21, 2005

Honorable Ricardo H. Hinojosa
U.S. District Judge
1701 W. Bus Highway 83
Bentsen Tower, Suite 1028
McAllen, TX 78501

Re: MDL-1657—In re Vioxx Products Liability Litigation

*Felicia Garza, et al. v. Merck & Co., Inc., et al.,* S.D. Texas, C.A. No. 7:05-17

Dear Judge Hinojosa:

Presently before the Panel pursuant to 28 U.S.C. § 1407 is a notice of opposition to the Panel's conditional transfer order in the above matter pending before you. The parties will have an opportunity to fully brief the question of transfer and the matter will be considered at a bimonthly Panel hearing session. In the meantime, your jurisdiction continues until any transfer ruling becomes effective.

If you have a motion pending - such as a motion to remand to state court (if the action was removed to your court) - you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

Please feel free to contact our staff in Washington with any questions.

Kindest regards,

Wm. Terrell Hodges
Chairman

# Exhibit B

1

1          UNITED STATES DISTRICT COURT
2          EASTERN DISTRICT OF LOUISIANA
              NEW ORLEANS, LOUISIANA

3

4

5

IN RE:  VIOXX PRODUCTS        *    Docket MDL 1657-L
6    LIABILITY LITIGATION         *
                                 *    June 23, 2005
7                                 *
                                 *    9:30 a.m.
8  * * * * * * * * * * * * * * * *

9

10

              STATUS CONFERENCE BEFORE THE
11              HONORABLE ELDON E. FALLON
              UNITED STATES DISTRICT JUDGE
12

13  APPEARANCES:

14

For the Plaintiffs:         Seeger Weiss
15                              BY:  CHRISTOPHER A. SEEGER, ESQ.
                              One William Street
16                              New York, New York 10004

17

For the Defendants:         Stone Pigman Walther Wittmann
18                              BY:  PHILLIP A. WITTMANN, ESQ.
                              546 Carondelet Street
19                              New Orleans, Louisiana 70130

20

Official Court Reporter:    Toni Doyle Tusa, CCR
21                              500 Poydras Street, Room B-406
                              New Orleans, Louisiana 70130
22                              (504) 589-7778

23

24

Proceedings recorded by mechanical stenography, transcript
25  produced by computer.

2

PROCEEDINGS

(June 23, 2005)

1

2

3    THE DEPUTY CLERK:  Everyone rise.

4    THE COURT:  Be seated, please.  Good morning, Ladies

5  and Gentlemen.  Call the case, please.

6    THE DEPUTY CLERK:  MDL 1657, In Re: Vioxx.

7    THE COURT:  Counsel, make your appearances for the

8  record.

9    MR. SEEGER:  Good morning, Your Honor.  Chris Seeger

10  for the plaintiffs.  I'm going to be playing Russ Herman today.

11    MR. WITTMANN:  Phil Wittmann, Your Honor, liaison

12  counsel for the defendants.

13    THE COURT:  I understand we have some counsel on the

14  phone.  Who is that?

15    MS. SOTOODEH:  Pamela Sotoodeh in Chicago.

16    MS. KOPELMAN:  Richard Kopelman of Decatur, Georgia.

17    THE COURT:  Good morning.  This is our monthly status

18  conference.  I have received from the liaison counsel the

19  proposed agenda.  We will take the items in order.  The first

20  is LexisNexis File & Serve.  Let me have a report on that.

21    MR. SEEGER:  Judge, we continue to have problems with

22  LexisNexis.  We are having problems getting documents posted

23  and served.  On the other end, they're having problems

24  identifying firms that are already previously registered.  We

25  have got some calls set up with them to try to work through

M001225536

3

1   some of these issues.  We are hoping to be able to do that.

2           THE COURT:  Let's get them in person in the court.

3   Let's do it next week.  I will get my staff to give you a day.

4   I would like to see LexisNexis here, the president of the

5   company, or somebody who can talk with me about any problems.

6   I would like you all present to get this resolved.  We need to

7   go on line as quickly as possible.  We don't have time to have

8   to rely on surface mail.  There are too many people in this

9   case.  It really needs to be worked out.

10          I'm a little disappointed because LexisNexis

11  just took this over.  I've had some experience with the people

12  from whom they bought this company and we didn't have any

13  problems with the prior group.  I don't know why LexisNexis --

14  a bigger outfit, more resources -- is having problems when the

15  earlier group did not, so maybe they can help me understand

16  that.

17          MR. SEEGER:  We will make arrangements to bring them

18  in.

19          THE COURT:  Thank you.

20          MR. WITTMANN:  Yes, Your Honor.  We have not had

21  problems with LexisNexis.  It seems, from the defendants'

22  standpoint, to be working okay.  The few issues that have come

23  up, we have dealt directly with their representatives and they

24  have been responsive to our requests, so we are satisfied.

25  It's going okay from our standpoint.

M00122537

4

1          If the Court please, we might give the folks a
2    statistical background on what's happening in the MDL at this
3    point.  As of June 15, we had 907 cases in the MDL.  Although
4    some of those cases have not yet been served on Merck, they are
5    here, 907 of them.  There are over 700 Vioxx products liability
6    cases served and pending in federal court but not yet here.
7    There are over 170 cases served and pending in state courts
8    other than New Jersey and California.  There are over 1,900
9    cases served and pending in the New Jersey consolidated
10   proceeding.  There are approximately 180 cases pending in the
11   California state court, and those cases involve approximately
12   1,000 plaintiffs.  That's our statistical update.
13          THE COURT:  What about the numbers of class actions?
14          MR. WITTMANN:  Class actions I believe are 118.
15   That's up about eight from our last status conference.  We
16   either have provided or will provide copies of the additional
17   class action complaints to plaintiffs' counsel.  Their deadline
18   for filing the master complaint, incidentally, is August 1.
19          THE COURT:  Trial settings.
20          MR. WITTMANN:  Yes, Your Honor.  The first case that
21   we know that's set for trial is the Ernst case in Brazaoria
22   County, Texas, on July 11, 2005.  We have a case in New Jersey,
23   the Humeston case, which is set on September 12, 2005.  The
24   Guerra case is set for trial in Hidalgo County, Texas, on
25   September 19, 2005.  The Zajicek case is set for trial in

M001225538

5

1   Jackson County, Texas, on September 26, 2005, but we are told
2   that's likely to be continued over to the first quarter of
3   2006.   The Tomlin case is set for trial in Florida in St. Lucie
4   County sometime between October 3 and December 30, 2005.   That
5   exact date has not been fixed yet.   In addition to that, we
6   have a hearing set in the Engineers case in New Jersey on
7   June 30 to determine whether the court will certify a
8   nationwide case of third-party payors.

9            THE COURT:   One of the challenges, from the
10  standpoint of the MDL, is to deal with cases not only
11  throughout the country in the federal system, but also cases
12  that are in the state system.   One benefit of the MDL is
13  consistency and uniformity.   The significance of uniformity and
14  consistency in the large numbers of cases is to allow you
15  folks, who are the lawyers in the cases, to be able to get a
16  read on matters so that hopefully you can evaluate the cases
17  and see whether or not there's any shorter way of dealing with
18  it, namely settlements or dealing with it in some motion way or
19  other evidence.   Consistency or at least predictability is one
20  of the benefits of trials.

21           My concern oftentimes, if there are trials in
22  various jurisdictions, is that it doesn't afford the same
23  consistency if you had it in one jurisdiction, wherever it is.
24  It just gives you some more consistency and, therefore, more
25  predictability, and you're able to then learn from that

6

1   particular trial.

2           My hope was that we could begin trying cases in
3   the MDL as quickly as we can so that you can have that read and
4   benefit, but I do recognize that cases have been in state court
5   for about four years now.  It's hard to have a litigant wait,
6   after they have done all the work in a particular case, and
7   then have to delay unduly.  I have to measure both of those
8   things and weigh both of those things.  I've been getting a lot
9   of good cooperation from the various state courts, and I think
10  that many of them feel the same way as I do.  We will do the
11  best we can with it.  In that regard, let me segue into the
12  next item, which is the selection of cases for an early trial
13  date in this particular proceeding.

14          MR. SEEGER:  Judge, if you don't mind, on the last
15  point, just for the benefit of the lawyers reading the
16  transcript, we have requested of the defendant that going
17  forward, when they list the trial cases, that they give us the
18  name of the case, the court it's in, the attorney of record,
19  and if they can tell us what the injury is.  I think that will
20  assist us in coordinating with those lawyers and help our state
21  federal liaison committee, as well.

22          THE COURT:  Fine.  We have got to watch from both
23  sides that cases are not tried before it's appropriate to try
24  them because that's going to skew the situation.  It's not
25  going to help anybody to try a case that is either not

M00122S540

1 representative or that's not ready to be tried.  It's going to

2 hurt the rest of your cases.  Let's be conscious of that.

3         MR. WITTMANN:  I think, in response to Chris' point,

4 we have been talking about Ernst and Humeston for a long time

5 now.  I thought I had given that information to Russ, but we

6 will make sure he has it from now on.

7         THE COURT:  Talk to me about trial dates for the

8 cases here.

9         MR. WITTMANN:  Trial dates here, Judge, Mr. Herman

10 and I have been meeting and working on it ourselves.  More

11 recently than that, Mr. Marvin has been meeting with Mr. Seeger

12 and others on the plaintiffs' steering committee to try and get

13 a pool of cases from which we can select cases for trial here

14 in the Eastern District.  I would like to let Mr. Marvin

15 address that since he has been more familiar with the recent

16 negotiations than I have.

17         THE COURT:  Okay.

18         MR. MARVIN:  Good morning, Your Honor.  Your Honor,

19 we have identified two pools of cases that could yield cases

20 for early trials.  The first pool could come from the Eastern

21 District of Louisiana, where there are approximately 40 cases

22 presently on file.  What we would need to do for those cases is

23 to have a short schedule for submission of the plaintiff fact

24 sheets so that both plaintiffs and defendants could look at

25 those cases and make some selections from those cases.

M0012554I

8

1          A second pool of cases, though, could come from
2   cases that have already been filed in the federal court and,
3   indeed, were filed even before the establishment of this MDL.
4   Discovery in a number of those cases has proceeded, and some to
5   an advanced stage.  There are approximately 40 cases, for
6   example, where requests for interrogatories have been made,
7   answers have been given, plaintiff fact sheets have been
8   submitted, and medical records collected.  That's an important
9   matter because collection of medical records could take several
10  months.  So we do have 40 cases where we think that, working
11  with the plaintiffs, we can identify those cases.  Those cases
12  would have objective criteria for the selection of those cases
13  because of the advanced discovery and, indeed, we would be
14  prepared to send our list of cases that we think would fit that
15  criteria within the next five days.
16          THE COURT:  Let's do that in five days, then let me
17  hear from the plaintiffs in five days, and then we will meet
18  and pick the cases.  The Eastern District cases I can try here.
19  The other cases that are put in from other states, even in the
20  federal system, in view of the Lexicon case I may have
21  difficulty trying them unless there's some stipulations.  I can
22  do it in one of two ways.  I can either try them with the
23  stipulations here or I can go to the area that the case
24  emanates from.  An MDL judge sits throughout the country and is
25  able to do that.  I can go to the other area.

M00122S542

9

1          The thing that you both have to look at is the
2   Circuit that you are dealing with because if I try them here,
3   even with stipulations, my understanding is the Fifth Circuit
4   will take the case from me in the appeal.  If I try them in
5   another area, the circuit in that area will try it.  I don't
6   know whether it's good or bad or whether people have feelings
7   one way or the other, but at least that's something for both
8   sides to consider when we talk about those cases.
9          MR. MARVIN:  Fair enough.
10         THE COURT:  Also, logistics, if I'm going to go some
11  other place, that area needs to know I'm going to be there, the
12  court space and the Marshals Service and things of that nature.
13         MR. MARVIN:  Thank you, Your Honor.  Once that list
14  is completed, we will continue working with the PLC to review
15  that list and hopefully come up with some cases.
16         THE COURT:  After five days, if the plaintiffs can
17  get to me, I'll set a meeting.  I will see both of you and pick
18  the cases.
19         MR. SEEGER:  Judge, just a couple of brief comments
20  on this.  We are all for getting a case scheduled for trial as
21  soon as possible.  We like the November/December timeframe.
22  I'm not one of those lawyers and I don't think the attorneys on
23  the PSC are lawyers that believe we have to turn over every
24  document and every stone before we start trying a case.
25  However, I do want to make the Court aware of the fact that we

M00122554-3

10

1   are trying to get discovery from the FDA and some third parties
2   and some remaining discovery from Merck that we would like to
3   get.
4           THE COURT:  The early cases, if we are going to push
5   then as quickly as we can to make them meaningful, it's not
6   just to try the cases.  It's to give both of you some idea of
7   how a jury feels about that particular case.  First, I need
8   cases that are ready for trial.  It's not going to do you any
9   good to try a case that's not ready for trial because whatever
10  the verdict is, somebody is going to have an excuse for it and
11  say, "Well, but for it being ready, it would have been
12  different," that sort of thing, whatever it is.
13          Secondly, I would like you to give some thought
14  to grouping them.  If we are dealing with death cases, I don't
15  want to try all death cases because there are personal injury
16  cases, so we ought to try some cases that will give you some
17  benefit from the jury's view of that particular case.  We need
18  cases that are ready and we need some variety.
19          MR. SEEGER:  Thank you, Judge.  With your comments in
20  mind, we will be talking with the defendants about potentially
21  a pool.  We will be proposing cases, as well.  Thank you.
22          THE COURT:  Thank you.  Class actions is the next
23  item on the agenda.
24          MR. WITTMANN:  Yes, Your Honor.  I have really
25  covered that already.  I think it's on track in accordance with

M00122554

1   the Pretrial Order governing class actions, and the plaintiffs
2   are due to file their master complaint or complaints by
3   August 1.
4                THE COURT:  Okay.  The discovery directed to Merck.
5                MR. WITTMANN:  Yes, Your Honor.  There are a couple
6   of facets to that.  First of all, I don't think your Pretrial
7   Order on the individual cases is generally available yet, but
8   we have submitted an agreed Pretrial Order to you on the
9   individual cases.  I understand you have signed it, but it
10  hasn't been posted yet.
11               THE COURT:  I have signed it, yes.
12               MR. WITTMANN:  There are two parts to that order.
13  The first part deals with the actual procedure for filing
14  motions and dealing with that process in the MDL.  The second
15  part, which we suggested be designated "Pretrial Order __ A,"
16  if you recall, dealt with the actual review of prior discovery
17  produced by Merck in other cases.  That process is ongoing.
18  The protocol for doing that is established by that Pretrial
19  Order and the parties are doing that now, even as we speak, up
20  in New Jersey.
21               We don't have any problems with respect to the
22  documents that have already been produced and the depositions
23  that have been taken.  Those are being made available to the
24  plaintiffs' steering committee, and so far as I know that
25  process is going on without any problem.  We have some

M00122554S

12

1    significant disputes with respect to the additional discovery
2    propounded by the plaintiffs' steering committee, both the
3    interrogatories and the document requests.  It's our belief
4    they are overly broad.  We have made that clear to the
5    plaintiffs' liaison counsel and plaintiffs' steering committee.
6    The parties have been working, trying to narrow those requests
7    to take into account the extent of which those requests are
8    duplicative of materials produced in other proceedings which
9    are being made available up in New Jersey.

10                We have set, by agreement with the plaintiffs'
11    steering committee, I think a deadline of July 5 by which to
12    complete that meet-and-confer process to try and narrow down to
13    see if we can agree on what additional materials will or will
14    not be produced.  If we are unsuccessful, then we will be in to
15    see Your Honor, I think, within 10 days after that.

16                THE COURT:  Let me just make a couple of comments on
17    the discovery part.  Discovery, particularly paper discovery,
18    is supposed to be helpful and not just stumbling blocks.  The
19    purpose of discovery is to help you try your cases or get ready
20    for trial.  If you get so tied into discovery, it gets to be so
21    voluminous and so time consuming and so burdensome that it saps
22    not only your energy, but your resources and your thinking and
23    sidetracks you, it is not good.  It's got to be helpful.  It
24    can't be just, "Let's get it because it's there," "Let's not
25    give it because we have got it."  It's got to be helpful.

M00122S546

13

1        My thinking on discovery is that you all first
2   meet and share with each other a draft of what you need and
3   discuss it.  If you can arrive at an agreement, that's fine.
4   If you can't arrive at an agreement, then before it's in final
5   form, talk to me about it.  I'll tell you what my ruling will
6   be so we don't have to go back and forth.  The plaintiffs don't
7   have to wait for 30 days to get a response, which is an
8   objection, and then they have to wait for another 30.  We don't
9   have time to do that, so we have to streamline it.  Get
10  together and see what you agree on.  I don't have to be brought
11  into the agreement.  The disagreements, bring me in and I will
12  resolve the disagreements.  We will do it as quickly as we can.
13        MR. WITTMANN:  Your Honor, are you saying that during
14  the course of our negotiations, if we do reach some impasse,
15  that you would welcome a conference call?
16        THE COURT:  Get it to me right there and I'll resolve
17  the controversy.
18        MR. SEEGER:  If Russ were here, he would have a great
19  quote from William Shakespeare something to the effect, "I've
20  never met a defendant that said a discovery request wasn't
21  burdensome," but having said that --
22        THE COURT:  I'm sure Shakespeare said something like
23  that.
24        MR. SEEGER:  In New York there's a guy named
25  Shakespeare who said something along those lines.  The truth is

M001225547

14

 1  we served discovery.  Merck has asked for a little bit more
 2  time to continue discussing it.  We are going to do that.  We
 3  are anxiously awaiting their response.  There are no real
 4  surprises in what we are asking for.  As you said, Your Honor,
 5  the case is being litigated.  It has been litigated for a
 6  while.  I think we all know what we need.

 7          THE COURT:  Again, if you have already got some
 8  material, let's work out something that if you've got it they
 9  don't need to reproduce it.  I know that sometimes you receive
10  some material that's case specific and this is noncase
11  specific, so you may need to go outside of that.  If you have
12  got it, let's get on to something else.  The Pretrial Order
13  governing individual cases.

14          MR. WITTMANN:  Yes, Your Honor.  You have those now.
15  There are actually two Pretrial Orders.  One relates to the
16  production of documents in other cases, which is really a part
17  of the Pretrial Order for the individual cases.

18          THE COURT:  I have that.  I signed it.  It should be
19  posted.  Merck employee information is the next item.  I have
20  briefs on that.  I've set next Wednesday at 2:00 to have a
21  hearing on that oral argument on that question.  The next item
22  is discovery directed to the FDA.  How are we with that?  We
23  had some misunderstandings.  I got the FDA on the phone and
24  everybody was able to talk about it.  I had the opportunity to
25  express my views.  I haven't heard on it formally since then.

M00122S548

15

1          MR. SEEGER:  Your Honor, my co-lead counsel,
2    Andy Birchfield, met with the FDA, so he is going to address
3    this issue.

4          MR. BIRCHFIELD:  Your Honor, Russ Herman, Troy
5    Rafferty, and I met with the FDA with their counsel and with
6    the U.S. attorney Sharon Smith at the FDA headquarters in
7    Rockville, Maryland.  We discussed the items on the subpoena
8    and we were able to reach agreement on a number of those
9    issues.  We have continuing dialogue on some of the others.
10   The important thing was that we were able to at least get the
11   discovery process, the review process, and the production
12   process moving while we are continuing dialogue.  They have
13   agreed to provide us with the first page of the documents that
14   were produced in Congress so we can review those and identify
15   which ones we actually need.  They have also agreed to start
16   the production.  We expect by the end of July to get the
17   initial production.  They will continue that on a rolling
18   basis.  We are making considerable progress on the FDA
19   production.

20         THE COURT:  I should express the Court's appreciation
21   to the chair of the FDA.  I appreciate his help.  He should
22   know that I am obliged to him for getting involved in this
23   matter and helping us move forward.  I do publicly appreciate
24   his help.

25         MR. BIRCHFIELD:  One other thing on that.  Merck,

M001225549

16

1    Ben Barnett, was also there.  There is cooperation there.  They
2    are agreeing to provide a list of documents that are between
3    the FDA and Merck so we can review that list and determine
4    which ones need to be produced and which ones we already have.

5          THE COURT:  Thank you very much.  Discovery directed
6    to third parties is the next item.

7          MR. SEEGER:  Your Honor, we are in the next couple of
8    days going to get out probably about a dozen or so subpoenas to
9    third parties.  We are going to try to stage it in a way so we
10   do it in phases, but at this point there's not much to report
11   other than we are going to get the subpoenas out.

12         THE COURT:  Let's keep that on the agenda so that you
13   can talk to me about it next time.  We really ought to work
14   through that.  That's an important part.  Deposition
15   scheduling.

16         MR. WITTMANN:  The first and third weeks of the
17   month, Judge, were set by prior Pretrial Order.  We had sent a
18   request to the plaintiffs' steering committee last week asking
19   that depositions be set in some of the Louisiana cases starting
20   the first week in July or, alternatively, the third week in
21   July, depending upon what they were able to pull together from
22   their clients.  We left the selection of the plaintiffs to be
23   deposed to the plaintiffs' steering committee because we are
24   trying to accommodate the individual plaintiffs and not just go
25   out and arbitrarily pick dates and select them.  Your Honor has

M0012255S0

17

1   told us in our prior Pretrial Order that we are to cooperate in

2   trying to arrange a mutually agreeable date before running out

3   and setting depositions by notice.

4            We have not heard back.  I understand from the

5   plaintiffs' steering committee this morning that the cases that

6   we have selected may not be suitable for the early trials in

7   this Court, so we are waiting to get a list, really, of the

8   cases that we think will go forward for an early trial and will

9   set them for deposition as soon as we can.

10           THE COURT:  Okay.  Let's keep an eye on prioritizing.

11  There's some issues that might cut across the spectrum.  You

12  may want to take depositions of individuals that have something

13  to say about the general theories so they will be significant

14  in each case, but with regard to case-specific discovery I

15  think you should focus on the cases that we select for trial

16  and do those.  Now, that doesn't mean that you only have to

17  have one wave of depositions.  You can have a couple of tracks

18  going on.  You have to be able to do several tracks at the same

19  time in a case like this.

20           MR. SEEGER:  You just anticipated my comments.  We

21  think that the depositions of plaintiffs should somehow

22  dovetail with what we are doing on trial schedules, although I

23  would like to correct the record.  I don't have any opinion on

24  whether cases by any other lawyer are appropriate for trial or

25  not.  I think we have to come up with a criteria for selecting

M00122551

18

1   cases that will inform decisions that may be made down the road
2   between the parties.

3              THE COURT:  The next item is the plaintiffs' profile
4   form and Merck's profile form.  I understand from the parties
5   that with regard to the plaintiffs' profile form they have
6   reached an agreement.  On Merck's profile form, they have not
7   reached an agreement.  Each side submitted to me their
8   disagreements and I have resolved the conflict.  I'll be today
9   putting out the defendants' profile form that will be used in
10  this case.  That will be resolved.

11             Also, with the profile forms of both sides, it
12  seems to me that we ought to do that in waves.  The first wave,
13  I would like both the plaintiffs and the defendants to focus on
14  and limit the forms to the cardiovascular events -- the
15  myocardial infarctions, the ischemic strokes, the deaths -- and
16  then shortly thereafter, when we get some experience with those
17  forms and with filling them out and any problems, in resolving
18  those problems we ought to be able to step it out quickly to
19  the second wave, which may not require as detailed information.
20  It seems to me to be the best way of doing it.  I put some
21  handwritten notes on this form and I will simply adopt it in an
22  order and give you my thinking on that particular form.  The
23  plaintiffs will have to redraft the form and submit it.
24  Medical records from healthcare providers is the next item.

25             MR. SEEGER:  Judge, I think that we have agreed on a

19

1   procedure for having medical records posted online almost
2   identical to what we are doing in New Jersey for plaintiffs'
3   lawyers as well as defense counsel to have access to records in
4   a secure way.  I think that's been accomplished.
5           MR. WITTMANN:  That's correct, Your Honor.
6           THE COURT:  Contact with claimants' healthcare
7   providers.  That's the subject of another motion.  I received
8   briefs for reconsideration on that issue.  I'll be hearing that
9   in oral argument on Wednesday, also.  The plaintiffs'
10  depository is the next item on the agenda.
11          MR. SEEGER:  We are happy to report we are up and
12  running.  We have got it staffed and it is available to
13  plaintiffs' lawyers who want to come look at documents and
14  contribute to the document review.  We welcome the help.
15          THE COURT:  Talk with the defendants.  If they have
16  no objection, I would like to at least look at the depository,
17  if that's possible, just see that it's up and running and so
18  forth.
19          MR. WITTMANN:  That's no problem, Judge, whenever
20  counsel wants to set it up.
21          THE COURT:  Set it up and we'll take a look at it.
22  The confidentiality agreement is the next one.
23          MR. WITTMANN:  That's been signed.  Your Honor, I
24  haven't had any problems with it.  We had one question as to
25  whether some of the material that was attached to I believe the

M00125553

20

1    brief filed by the state liaison committee may have contained
2    some confidential information.  I don't believe it really did,
3    but the time hasn't yet run for us to designate.  We are still
4    looking at that.  We may have some comment about it.  I don't
5    think it's a major problem.
6            THE COURT:  That's an issue always of concern and
7    it's a balancing issue.  It's a balancing issue between the
8    First and Sixth Amendments.  The First Amendment, of course,
9    the right of the public to know, it's vital in a democracy that
10   the public know.  It's also vital in a democracy that people
11   have every right to a fair trial.  There's some conflict
12   occasionally between the First and the Sixth Amendment.  The
13   way that it's worked out, in my judgment, in a fair way is to
14   not deprive the public of a right to know, but perhaps delay
15   the public's information, unless it is a critical type of
16   information which is necessary for immediate knowledge.
17           I'm focused, instead, on the right to a fair
18   trial for both sides, and there is certain proprietary
19   information in these documents that drug companies
20   realistically and legitimately get concerned about releasing,
21   proprietary information that could affect their present or
22   future business practices.  I am conscious of the public's
23   right to know, but I am also conscious of the fact that if I
24   don't have a confidentiality order, then it delays the
25   discovery and delays trials and delays justice.  I have dealt

M00122SS4

1    with this issue in that fashion.  We have a confidentiality
2    agreement which will allow the defendants comfort to produce
3    certain information without fear that their future economic
4    security is in jeopardy.  The remand issues.

5                MR. SEEGER:  Judge, that's in the report.  You are
6    going to be dealing with remand motions as a group by
7    procedures that you will be setting up.

8                THE COURT:  Right.  This is always an issue which the
9    MDL Court has to look at.  The question is posed.  There are
10   various issues of remand in various cases throughout the
11   country.  Again, a significant advantage of the MDL concept is
12   some consistency.  The Rule of Law is really based on
13   consistency.  If different decisions are made by numerous
14   judges, then you have no consistency and no predictability and
15   no one knows exactly what to do or how to do it.  It's easier
16   if one court decides some of these matters than if 50 or 100
17   courts decide the matter.

18               I'm conscious of dealing with the remand as
19   quickly as possible, but I do want to get them all together,
20   look at them, see if I can group them in some way, and then
21   direct my attention on each particular group and deal with that
22   issue in a consistent and fair fashion for that group.  I will
23   be dealing with them as quickly as I can, but also with an idea
24   of having more consistency.  I'll be speaking about this
25   perhaps later on because I do have some concepts and ideas

M001255555

1   about this.  Tolling agreements is the next item.

2        MR. SEEGER:  Judge, just to report that we have

3   accomplished our goal.  It was a long negotiation, but we got

4   it resolved.  Both sides have compromised and agreed on a

5   tolling agreement.  It seems to be working.  We are getting

6   cases in.

7        MR. WITTMANN:  The agreement was filed, I guess, on

8   the 9th of this month, so it's just recently been filed, but

9   we are starting to get people taking advantage of it.  We are

10  getting the short form exhibits mailed in.  We have a procedure

11  set up by the defendants to respond to those exhibits as they

12  come in.  We are keeping a record of them so we know exactly

13  where we stand with respect to the people who have elected to

14  go forward on the tolling agreements, Your Honor.

15       THE COURT:  I appreciate the help on both sides on

16  the tolling agreements.  I think it's good for each side.  I

17  think there's different advantages, but advantages for each

18  side, and I think it will be helpful to you.  Certainly, I

19  think it will be helpful to the litigants.  The next item is

20  state/federal coordination.  State liaison committee, are there

21  things that you want to say?

22       MS. BARRIOS:  Yes, Your Honor.  We have been fairly

23  active since our last meeting here.  At the Court's order, we

24  were allowed to file a brief on the issue of the Merck employee

25  information.  We did that and I question, Your Honor, if you

23

1   would like us to be present at the hearing on Wednesday to make

2   a presentation?

3           THE COURT:  Sure.  You are always welcome to

4   participate in a hearing.

5           MS. BARRIOS:  Thank you, Your Honor.

6           THE COURT:  I'm interested in your views.  I have

7   looked at the brief.  A lot of it has already been said.  I

8   don't think I need any response from the defendants on it.  I

9   think you have covered it in your particular response.  Let's

10  keep that in mind.  I know that oftentimes you see matters in

11  the same fashion as perhaps the plaintiffs' steering committee.

12          MS. BARRIOS:  Yes, Your Honor.

13          THE COURT:  If you do, just "Me, too" it.  I don't

14  need you to restate it.  That's sufficient.  If you see it in a

15  different light, just carve that out.  If I need some response,

16  I will direct the defendants to give me a response on it.

17          MS. BARRIOS:  Yes, sir.  We have no intention of

18  being duplicative.  With the cooperation of Mr. Wittmann's

19  office and Mr. Herman's office, we have received a roster of

20  over 700 plaintiffs' attorneys names.  We sent out our first

21  very lengthy newsletter detailing the orders, the web site,

22  etc.  We have gotten extremely good feedback from different

23  plaintiffs' attorneys across the country on it.  We have had

24  several conference calls with our committee.  Mr. Witkin on our

25  committee made a presentation at the Mealey's seminar about the

M00122S557

24

1  MDL yesterday.  We met with the PSC last night and look forward

2  to working with them to reserve the rights of the plaintiffs'

3  attorneys and their clients.

4          THE COURT:  I appreciate all of your interest and

5  work and willingness to work on the committee.  It's very

6  important.  I know there's some interests that are different.

7  That's the way of the world.  There's some joint interests and

8  so rather than reinvent the wheel and do things a second time,

9  third time, fourth time, it is helpful for you to be in the

10  development of it so that you can just migrate that information

11  into your proceedings so you don't have to redo it again.

12          MS. BARRIOS:  Yes, Your Honor.  Thank you.

13          MR. SEEGER:  From the PSC's perspective, we have

14  enjoyed the working relationship with the committee.  We think

15  the lawyers on the committee are of extremely high quality.

16  They have been proactive in anticipating issues.  We welcome

17  their input on anything we do.  We did have dinner last night,

18  had a chance to talk through some important issues before we

19  poured the first bottle of wine -- which was helpful -- and we

20  are looking forward to the continued cooperation between our

21  committee and theirs.

22          THE COURT:  The waiver of service is the next item.

23          MR. WITTMANN:  Yes, Your Honor.  You have the

24  Pretrial Order in effect on that.  I think it's Pretrial

25  Order 15, and we haven't had any problems.

M00125558

25

1      THE COURT:  The next item is direct filing into the

2  MDL.  Ms. Loretta Whyte was kind enough to meet with us earlier

3  today to discuss that in more detail.  The issue, of course, is

4  whether or not the party who files directly into the MDL should

5  have the MDL caption or should have their independent caption.

6  Ms. Whyte tells us that the best way of doing it, from her

7  vantage point, is to have an individual caption just as you

8  would if you file a regular case, but put on that "Related

9  Case, MDL" and give the number.  She will then migrate it into

10 the MDL proceedings.  That will be the best way of doing that.

11 Is that right, Ms. Whyte?

12      MS. WHYTE:  Yes.

13      MR. SEEGER:  There's one thing on that issue that's

14 important to note for people reading the transcript.  There's

15 been some confusion whether the lawyers need to be admitted

16 pro hac to file cases.

17      THE COURT:  They do not need to be admitted pro hac.

18 I have waived that.  Anybody who's in the MDL or has a case in

19 the MDL is able to handle a matter.

20      MR. SEEGER:  Just to be clear, Ms. Whyte, the cases

21 that get filed must mention the Vioxx MDL and that it's a

22 related case?

23      MS. WHYTE:  It's a related case.

24      THE COURT:  Anything further on that?  Pro se

25 claimants.

M00122559

1        MR. SEEGER:  Well, Your Honor, we have been referring

2   what we have been getting from the Court to our plaintiffs'

3   liaison counsel and these are being dealt with.

4        THE COURT:  I think we have a system of doing it.  So

5   far most of the pro se claimants have been individuals who have

6   not been able to be personally present at these meetings.  They

7   are generally incarcerated some other place and can't make it

8   here, so they need a lawyer.  They have expressed their

9   interest in being represented, so I have given that to liaison

10  counsel.  I understand that what they do is contact lawyers in

11  the state of that particular institution and make those lawyers

12  available to them, or at least tell them that they would be

13  available.  That seems to be working.

14        Anything further from anyone that I haven't

15  covered before I set the next status conference date?  Anything

16  either from the state committee, liaison committee, or anyone

17  in the audience?  I'm interested in hearing your views.

18        MR. WITTMANN:  Nothing from the defendants,

19  Your Honor.

20        MR. SEEGER:  Nothing further from plaintiffs,

21  Your Honor.

22        MS. BARRIOS:  Nothing further.

23        MR. BECNEL:  Judge, I have a lawyer who has referred

24  me 160 cases from Oregon.  I have dealt with Mr. Wittmann's

25  associate, Ms. Wimberly.  He wants to bring them all here, but

M001225560

1   because of the peculiar law in Oregon he is starting to have to
2   file them right away in Oregon.  I'm trying to get some sort of
3   a deal with the defendants to get them all here without missing
4   a statute problem.  I'm just wondering how we can work that
5   out.
6           MR. WITTMANN:  We are working that out now, actually,
7   Your Honor, with a procedure for the filing of a master
8   complaint in the MDL that will permit people to come in and tag
9   along and sign on with the short form joinder pleading, which
10  should take care of Mr. Becnel's problem.
11          THE COURT:  Mr. Seeger, get with Mr. Becnel and see
12  if we can handle this particular problem.
13          MR. SEEGER:  Yes, Your Honor.
14          MR. GIRARDI:  Tom Girardi, Your Honor.
15          THE COURT:  Mr. Girardi.
16          MR. GIRARDI:  Your Honor, we now have a state court
17  judge for the 2,000 cases in California.  I will provide you
18  with that contact information, Judge Chaney.
19          THE COURT:  Please do that because I am trying to
20  keep in touch with the state court judges.  When we begin
21  setting some Daubert hearings or other hearings, if they wish
22  to come in the case, we will do either the voice or do video
23  streaming so that they can participate and deal with it
24  according to their law, but they won't have to retake the
25  witnesses.  If they have any questions, they can ask the

28

1    questions while the witnesses are there, so I would like to

2    know that.  Thank you.

3             MR. SEEGER:  Just for the record, if I could ask

4    Mr. Girardi to copy liaison counsel on that?

5             MR. GIRARDI:  Yes.

6             THE COURT:  Anything else?  The next status

7    conference is Tuesday, July 19, 9:30.  I'll meet with the

8    liaison counsel in my chambers at 8:00 that day to begin

9    getting ready for this meeting.  I appreciate everybody's

10   cooperation and for their reports.  Thank you.  Court will

11   stand in recess.

12            THE DEPUTY CLERK:  Everyone rise.

13            (WHEREUPON, the Court was in recess.)

14                            * * *

15                          CERTIFICATE

16            I, Toni Doyle Tusa, CCR, Official Court Reporter,
     United States District Court, Eastern District of Louisiana, do
17   hereby certify that the foregoing is a true and correct
     transcript, to the best of my ability and understanding, from
18   the record of the proceedings in the above-entitled and
     numbered matter.

19

20

21                              *Toni Doyle Tusa*
                               Toni Doyle Tusa, CCR
22                             Official Court Reporter

23

24

25

M001225662

# Exhibit C

FILED
MISSOULA, MT

2006 MAY 12  AM 8 04

PATRICK E. DUFFY

BY _____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | | |
|---|---|---|
| THE STATE OF MONTANA,<br>*ex rel* MIKE McGRATH,<br>Attorney General, | ) <br> ) <br> ) <br> ) | CV-06-07-H-DWM |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) | ORDER |
| MERCK & CO., INC., | ) <br> ) | |
| Defendant. | ) <br> ) | |

This case presents jurisdictional and procedural questions for the Court. The State of Montana filed a motion to remand this case back to state district court. In turn, Merck filed a motion to stay all proceedings pending a transfer decision by the Judicial Panel on Multidistrict Litigation. Finally, the State has requested expedited consideration of its motion to remand. Experience and case law support deference to the Judicial Panel.

While the case may address state law and this Court may have the liberty to rule on the motion to remand before a decision by the Judicial Panel, the Court must consider the staggering number

-1-

of cases involving Merck that are now before the United States
District Court for the Eastern District of Louisiana as part of
MDL Proceeding No. 1657. *See In re Vioxx Prods. Liability
Litigation*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005)(the Judicial
Panel consolidated 148 actions in 48 federal districts to the
transferee court where the judge has experience in complex
multidistrict liability litigation). Judicial economy dictates
this Court follow suit. Any prejudice suffered by the State of
Montana as a result of a stay will be minimal. *See Rivers v.
Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997). Notably,
the Judicial Panel stated "[t]he pendency of a motion to remand
to state court is not a sufficient basis to avoid inclusion." *In
re Vioxx Prods. Liability Litigation,* 360 F. Supp. 2d at 1354.
This Court will stay the motion to remand pending a "tag-along"
determination by the Judicial Panel.

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to
stay proceedings (dkt #5) is GRANTED pending a determination by
the Judicial Panel on Multidistrict Litigation; and

IT IS FURTHER ORDERED that Plaintiff's motion to expedite
(dkt #9) is DENIED.

DATED this ___11___ day of May, 2006.

Donald W. Molloy, Chief Judge
United States District Court

-2-

# Exhibit D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>MERCK & CO., INC,<br><br>                    Defendant. | Case No. 3:06-cv-0018-TMB<br><br><br>O R D E R |

## BACKGROUND

The State of Alaska ("the State") filed this case on December 23, 2005, in Superior Court. The State's complaint alleges that Merck's marketing practices for the drug Vioxx violated Alaska's Unfair Trade Practices and Consumer Protection Act. The complaint also alleges that Merck made false statements concerning the safety of Vioxx "that induced the State of Alaska to authorize expenditure of Medicaid funds for the purchase of Vioxx." Docket No. 1, Ex. 3 (Compl. ¶ 22). Merck removed the case to federal court, arguing that the case raises a substantial federal question. Docket No. 1. Merck then moved to stay all proceedings pending transfer to the Judicial Panel on Multidistrict litigation ("MDL"). Docket Nos. 8 (Mot.); 14 (Opp'n); 15 (Reply). Subsequently, the State moved for remand back to state court. Docket Nos. 13 (Mot.); 19 (Opp'n); 24 (Reply). On February 7, 2006, the MDL Panel issued a conditional transfer of the case. Docket No. 17, Ex. A. The conditional transfer order states that this action appears to involve "questions of fact which are common to the actions previously transferred" to the MDL Panel. *Id.* The MDL Panel issued a schedule requiring the State to oppose the transfer by March 9, 2006. *Id.* The State has moved for expedited consideration of its motion to remand, requesting that the Court issue a

1

ruling before the State's opposition to the MDL transfer is due.  Docket No. 25.  The motion for

expedited consideration at **Docket No. 25 is GRANTED.**

DISCUSSION

Courts must strictly construe the removal statute, 28 U.S.C. § 1441, against removal

jurisdiction.  Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in

the first instance." *Duncan v. Sutetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (citing *Gaus v. Miles,*

*Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  As is pertinent here, 28 U.S.C. § 1441 provides for the

removal of (1) actions arising under federal law or (2) actions between parties of diverse citizenship

where none of the defendants are citizens of the forum state.  *See* 28 U.S.C. § 1441(b).[1]  The Court

must examine the complaint filed in state court to determine whether it states a claim arising under

federal law.  In making this determination, it is irrelevant whether the defendant intends to rely on

the United States Constitution or a federal statute in defending the action.  The inquiry is limited to

the grounds for relief invoked by the plaintiff in its complaint.  *See Merrell-Dow Pharmaceuticals*

*Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

On February 16, 2005, the MDL Panel issued the first transfer order establishing MDL-

1657, *In re Vioxx Marketing, Sales Practices and Products Liability Litigation,* pursuant to 28

U.S.C. § 1407.  In that order the Panel stated, "[t]he pendency of a motion to remand to state court

is not a sufficient basis to avoid inclusion in Section 1407 proceedings."  360 F. Supp. 2d 1352,

1354 (J.P.M.L. 2005).  The pendency of transfer to MDL, however, does not limit the Court's

authority to rule on the motion for remand.  Several courts have opted to rule on motions for

---

[1] The statute provides:

> Any civil action of which the district courts have original jurisdiction
> founded on a claim or right arising under the Constitution, treaties or
> laws of the United States shall be removable without regard to the
> citizenship or residence of the parties.  Any other such action shall be
> removable only if none of the parties in interest properly joined and
> served as defendants is a citizen of the State in which such action is
> brought.

28 U.S.C. § 1441(b).

ORDER

remand despite the pendency of transfer to MDL-1657. *See, e.g., Kantner v. Merck & Co.*, 2005 WL 277688 (S.D. Ind. Jan 26, 2005). However, 3,008 actions have been transferred to MDL-1657. Docket No. 17, Ex. A.

A preliminary review of the complaint and motion to remand reveals the difficult issue of whether federal question jurisdiction exists based on federal Medicaid law, which limits a state's authority to decline to pay for prescription drugs covered under the program. *See* 42 U.S.C. §§ 1396r–8(d)(4). As this case does not plainly warrant immediate remand, the Court finds that transfer to the MDL panel will promote efficient and coordinated proceedings, including the consideration of remand motions.[2] The State will suffer minimal prejudice from the stay. By contrast, the risk to Merck of duplicative litigation is significant.

**IT IS THEREFORE ORDERED:**

The motion to stay proceedings pending transfer to the MDL panel at **Docket No. 8** is **GRANTED**. This case will be transferred to MDL-1657 for a consolidated determination of jurisdictional issues.

Dated at Anchorage, Alaska, this 6th day of March 2006.

/s/ TIMOTHY M. BURGESS
**TIMOTHY M. BURGESS**
United States District Judge

---

[2] The judge presiding over the Vioxx MDL proceeding has expressed his preference that remand motions be presented to the MDL Panel: "There are various issues of remand in various cases throughout the country. Again, a significant advantage of the MDL concept is some consistency... I'm conscious of dealing with the remand [motions] as quickly as possible, but I do want to get them all together . . . and deal with that issue in a consistent and fair fashion." Docket No. 19, Ex. 1 (Transcript of Status Conference at 21, MDL No. 1657 (June 23, 2005)).

ORDER

C:\Documents and Settings\patty\Local Settings\Temp\notesF8C1A4\Merck.wpd  3

# Exhibit E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
EVERARDO S. AGUILAR,

                            Plaintiff,                      **MEMORANDUM AND ORDER**

         -against-                           05-CV-4865 (SJ)

MERCK & CO., INC., et al.,

                         Defendants.
----------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

      Currently pending before this Court is an application by defendant Merck & Co., Inc.

("defendant" or "Merck") to stay this action pending a decision by the Judicial Panel on

Multidistrict Litigation ("the MDL Panel") whether to transfer the case as a "tag-along" action to

In re VIOXX Products Liability Litigation, MDL No. 1657, an MDL action pending in the

Eastern District of Louisiana.  Plaintiff Everardo S. Aguilar ("plaintiff" or "Aguilar") has

consented to stay discovery only, has cross-moved to remand the case to state court and opposes

any stay of that motion.

      For the reasons that follow, defendant's motion to stay this action is granted in its

entirety, and the motion to remand is deferred until the issue of transfer is resolved by the MDL

Panel.

## BACKGROUND

      On September 21, 2005, plaintiff commenced this action in New York State Supreme

Court, Queens County, against Merck (the manufacturer of the prescription drug Vioxx) and a

series of medical providers who are alleged to have improperly prescribed Vioxx to plaintiff.

Merck removed the action to this Court on October 17, 2005, on the basis of diversity

jurisdiction, contending that the non-diverse medical providers were fraudulently joined in order
to defeat diversity jurisdiction.

On October 31, 2005, Merck moved to stay all further proceedings in this district pending
a decision by the MDL Panel on whether the case should be transferred to the MDL Court in the
Eastern District of Louisiana pursuant to 28 U.S.C. § 1407.[1]  On November 7, 2005, the MDL
Panel issued its thirtieth conditional transfer order of tag-along cases, which, absent an objection
within 15 days, would transfer this case and others to the MDL Court.  See 11/15/05 Letter to the
Court from Vilia B. Hayes and Conditional Transfer Order (CTO-30), appended thereto.[2]  That
same day, plaintiff moved in this district to remand the instant action to state court.  See
Memorandum of Law in Support of Plaintiff's Motion for an Order Remanding this Matter to
State Court ("Pl. Mem.").  Plaintiff resists having the remand motion deferred until after the
MDL Panel has transferred the case.  See id. at 5-7; Plaintiff's Partial Opposition to Merck's
Motion for Stay.

## DISCUSSION

As plaintiff correctly contends (see Pl. Mem. at 5), the pendency of a request to transfer a
case to an MDL proceeding does not divest the transferor court of the authority to resolve a
motion to remand the case to state court.  See, e.g., JPML R. 1.5; Evans v. Merck & Co., Inc.,

---

[1]  The MDL Panel established the MDL proceeding on February 16, 2005.  See In re VIOXX
Prods. Liab. Litig. (MDL 1657), 360 F.Supp.2d 1352 (J.P.M.L. Feb. 16, 2005).  To date, more
than 2,500 cases have been transferred to or filed directly in the MDL proceedings.  See
Memorandum of Law in Support of Motion of Defendant Merck & Co., Inc. to Stay All
Proceedings Pending a Decision on Transfer by the Judicial Panel on Multidistrict Litigation at 3.

[2]  This Court has no information as to whether plaintiff has filed with the MDL Panel an
objection to transfer.

No. 05-1323-T/AN, 2005 WL 3008643, at *1 (W.D. Tenn. Nov. 9, 2005). Even after the MDL

Panel has issued a conditional transfer order, the transferor court retains the discretion to grant or

deny a motion to stay consideration of a jurisdictional challenge. See id.; North v. Merck & Co.,

Inc., No. 05-CV-6475L, 2005 WL 2921638, at *1 (W.D.N.Y. Nov. 4, 2005). The jurisdiction of

the transferor court does not end until the order of the MDL Panel transferring the case has been

filed with the MDL Court. See David F. Herr, Annotated Manual for Complex Litigation §

20.131 (4th ed. 2004) (hereinafter "Manual for Complex Litigation").

In connection with the Vioxx litigation, the MDL Panel has expressly observed that "[t]he

pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in

Section 1407 proceedings." In re VIOXX Prods. Liab. Litig., 360 F.Supp.2d 1352, 1354

(J.P.M.L. Feb. 16, 2005). Indeed, in establishing the Vioxx MDL, the Panel transferred to the

MDL Court two actions with pending motions to remand to state court. See id. at 1353-54.

According to the MDL Panel, the motions to remand in those two cases, "as well as in any other

MDL-1657 actions[,] can be presented to and decided by the transferee judge." Id. at 1354

(citing In re Ivy, 901 F.2d 7 (2d Cir. 1990)).

The Panel's decision is consistent with the law in the Second Circuit, where the

"preferable practice" in MDL litigation is to allow the transferee court to resolve jurisdictional

issues that implicate common questions of law and fact arising in numerous cases. Medical

Soc'y v. Conn. Gen. Corp., 187 F.Supp.2d 89, 91 (S.D.N.Y. 2001) (citing Ivy, 901 F.2d 7); see,

e.g., North, 2005 WL 2921638, at *1 (noting, in Vioxx case, that the Second Circuit has adopted

the "general rule" of deferring decisions on remand motions until after the MDL Panel has

transferred the case); DeBono v. American Home Prods. Corp., No. 04 Civ. 3810(DC), 2005 WL

-3-

2601177, at *1 (S.D.N.Y. Nov. 16, 2004) ("[T]he Second Circuit has observed that an MDL

Court is often best suited to resolve remand motions, especially when the issues involved are

likely to recur."). As the Second Circuit observed in Ivy, where the jurisdictional issue "is easily

capable of arising in hundreds or even thousands of cases in district courts throughout the

nation," and "involves common questions of law and fact," "[c]onsistency as well as economy is

. . . served" by having the jurisdictional objections "heard and resolved by a single court . . . ."

Ivy, 901 F.2d at 9; see Manual for Complex Litigation § 20.131 ("[T]he pendency of motions

raising questions common to related actions can itself be an additional justification for

transfer.").

      The aforesaid general rule should be followed in the instant case.  Merck has challenged

the joinder of doctors and/or pharmacies in other Vioxx cases in this circuit, and the plaintiffs'

motions to remand have been deferred until after transfer to the MDL litigation, on the ground

that "the issues raised in plaintiff's remand motion are not unique to this case." North, 2005 WL

2921638, at *2; Krieger v. Merck & Co., Inc., No. 05-CV-6338L, 2005 WL 2921640, at *2

(W.D.N.Y. Nov. 4, 2005); see also Evans, 2005 WL 3008643, at *1 ("[T]he jurisdictional issues

raised in this case are similar to those raised in other [Vioxx] cases that have been or will be

transferred to the MDL proceeding."); Walker v. Merck & Co., Inc., No. 05-CV-360-DRH, 2005

WL 1565839, at * 2 (S.D. Ill. June 22, 2005) ("[I]t is almost certain that the transferee court will

hear and decide many of the same issues Plaintiffs ask this Court to tackle in ruling on their

motion to remand.").  To be sure, a number of Vioxx decisions from outside this circuit have

resolved remand motions prior to the MDL Panel's decision on transfer.[3] Nevertheless, "there

are many more that have chosen to grant a stay," Evans, 2005 WL 3008643, at *1 (collecting

cases), including the two decisions from within this circuit. North, 2005 WL 2921638; Krieger,

2005 WL 2921640, at *2 (granting stay and noting that courts around the country have stayed

Vioxx cases "pending their transfer to the MDL, including more than 125 with pending remand

motions."); see, e.g., West v. Merck & Co., Inc., No. 05-1166-T/AN, 2005 WL 1630034 (W.D.

Tenn. July 7, 2005); Walker, 2005 WL 1564839. Moreover, at a proceeding in the Vioxx MDL

litigation, Judge Eldon B. Fallon, the district judge presiding over the MDL proceeding,

expressly acknowledged the advantages of having a single judge decide the many motions to

remand, and he assured the parties that he would deal with the motions "as quickly as possible . .

. ." Transcript of 6/23/05 Status Conference in In re VIOXX Prods. Liab. Litig., at 21 (appended

as Exhibit A to the Declaration of Vilia B. Hayes dated 11/22/05 ["Hayes Decl"]).

Having considered these decisions and the parties' arguments, this Court concludes "that

having the jurisdictional issues decided in one proceeding will promote judicial economy and

conserve judicial resources," Evans, 2005 WL 3008643, at *2, and will minimize "the risk of

inconsistent rulings . . . ." North, 2005 WL 2921638, at *2 n.2 (quoting Purcell v. Merck & Co.,

No. 05 CV 0443-L(BLM), slip. op. at 4-5 (S.D. Cal. June 6, 2005) (Hayes Decl. Ex. B)); see

North, 2005 WL 2921638, at *2 ("I agree with Merck that the objectives of the MDL process–

namely the avoidance of inconsistent rulings and the conservation of judicial resources–are best

---

[3] See, e.g., Plubell v. Merck & Co., Inc., No. 05-0831-CV-W-HFS, 2005 WL 2739036 (W.D.
Mo. Oct. 20, 2005); Rabe v. Merck & Co., Inc., Nos. Civ. 05-363-GPM, 05-378-GPM, 2005 WL
2094741 (S.D. Ill. Aug. 25, 2005); Kantner v. Merck & Co., Inc., No. 1:04CV2044-JDT-TAB,
2005 WL 277688, at *3 (S.D. Ind. Jan. 26, 2005).

met by allowing the MDL Court to decide plaintiff's motion to remand."). "[A]ny prejudice to

the plaintiff resulting from a stay would be minimal," Evans, 2005 WL 3008643, at *2, and

"does not outweigh the judicial economy interests" served by granting a stay. Walker, 2005 WL

1565839, at *2; see North, 2005 WL 2921638, at *2; Krieger, 2005 WL 2921640, at *2.

Therefore, Merck's motion for a stay is granted in its entirety.

## CONCLUSION

     For the foregoing reasons, Merck's motion to stay this proceeding pending the MDL

Panel's decision on transfer is granted and plaintiff's cross-motion to remand is deferred until the

issue of transfer has been resolved.

     **SO ORDERED.**

**Dated:**    **Brooklyn, New York**
         **November 22, 2005**


                      **ROANNE L. MANN**
                      **UNITED STATES MAGISTRATE JUDGE**